Yes, thank you, Your Honor. I'm Robert Powell on behalf of GB International and Mr. Park, Dong Park. The issue in this case involves an individual in a company applying for permanent resident status for a multinational executive. In order to qualify the person, the beneficiary, Mr. Park was required to have performed one year before he came to the United States in an that year is April 2013 to April 2014. There's not really any question at all that Mr. Park was employed by the company, by GB International. Not any question that he was employed as an executive by the company. The issue in this case is whether Mr. Park was employed primarily in an two things wrong with the decision made by the Immigration Service. First of all, they failed to consider important evidence that's in the record. In particular, a declaration submitted by Mr. Juncio Pack, a manager of the company, describing what the company's business was and the activities of the company. Sampled invoices which showed which employees, which subordinate employees were monitoring contracts. And the expert witness opinions submitted by two expert witnesses. For a second, we submit also that the agency has made a legal error in its understanding of what it means to work in a quote executive capacity. So the question is, did Mr. Park work in an executive capacity during this one year period? The first question I guess we need to understand is what the business of the company was or is and what the day-to-day activities are involved in taking care of the business of that company. GB International is an export company. It exports goods manufactured in the United States primarily to South Korea as well as a few other countries, primarily South Korea. But it involves purchasing equipment that's used in heavy industries, oil and gas drilling, for example, offshore drilling, and so on. Counsel, your time is going to go very, very quickly. I'd like to take you back to your specifics. First of all, on the things that the agency failed to consider. Did it not mention the Pack declaration at all? No, it did not mention the Pack declaration at all. Did it mention any of the facts that were contained in the Pack declaration? Mr. Pack describes the subordinate employees by name and position. Those are mentioned. Those also appear, for example, in organizational charts and in a declaration submitted in a cover letter submitted by the company. But it does not discuss the particular activities, the day-to-day activities that those individuals were involved in. That's really the critical part of the analysis that the agency doesn't engage in. What are the day-to-day activities involved in running this company and who's doing them? Are there enough employees to do that? I've got the Pack declaration up here. I'm looking at it. It's fairly short and a lot of it deals with his own operations rather than with Mr. Park's operations. I'm wondering, what did the agency overlook here in the Pack declaration? I'm looking at pages 78 to 79 in the excerpts of record. In particular, page 79 where it talks about Mr. Kim, Mr. Choi, and myself who do the initial negotiations regarding the price, the payment terms, and the delivery dates. He's authorized to approve the contract negotiations as long as they're less than $100,000. He talks about preparing a little further down, preparing the reports that are necessary that Mr. Park, the executive, is reviewing. Up above, this is the second paragraph. One area that Mr. Kim was responsible for is marketing. He's doing the marketing work for the company in this area. I'm looking at page 80. Which page are you on? I'm on page 79. And which paragraph? The second paragraph here, which says one area that Mr. Kim was specifically responsible for was marketing, the marketing work that the company needs to do. In this area, he would follow up with potential customers that Mr. Park had identified, the executive, the beneficiary, and with the administrative assistance of Ms. Kim, which sends them materials regarding GBI and so on. He analyzes the price proposals for the negotiations with vendors and so on and so forth. In addition, it talks about the work that Ms. Kim, Damon Kim, had performed. She's the woman that was hired. She was not present during the whole full year, but hired, I believe, in August of 2013. This is the paragraph 78 to 79, the carryover paragraph. Ms. Kim provided most of his support. In addition to the proposal, she is responsible for smaller suppliers and administrative assistance. She prepares the invoices and the purchase orders. The day-to-day work that's involved and so on. The day-to-day work involved in the company is performed by subordinate officials. That tells you that somebody was involved in some activity in the company besides Mr. Park. It doesn't tell us that Mr. Park is functioning in an executive capacity. No, but that deals with the critical question about who in the company is performing the day-to-day activities. The description of Mr. Park's activities, well, he has a very detailed, in his own declaration, he provides a very detailed description of what he does. That's also discussed in USCIS decision, but also confirmed by the declaration of Mr. Pack. That's on page 80. I think maybe where you were looking at before, on page 80, where Mr. Pack describes Mr. Park's involvement in running the company, in managing the company. This declaration of Mr. Pack, Jones AO Pack, is one that's not mentioned anywhere and not analyzed anywhere in the decision. That's, I think, a critical piece of evidence that the agency simply doesn't engage with. It doesn't mention it anywhere. It doesn't consider the evidence that's contained there. That declaration is also supported by the sample invoices that were submitted by the company. There was about 50 pages of invoices, sample invoices, over a period of about five or six months showing what was going on in the company. Those invoices show that they list the sales contacts for various export-import transactions that are going on. Those sales contacts, in other words, the people who, the producer of the equipment or the purchaser of the equipment, they're going to deal with the sales contacts. They're not going to deal with Mr. Park, the executive, but in terms of the day-to-day activities going on in the company, the sales contacts are the subordinate officials. The third very important piece of evidence that's overlooked are the expert declarations submitted by the two experts. The agency did refer to the expert declarations. But it in effect ignores them. It refuses to consider them because they say incorrectly that the experts did not use the definition in the statute or the regulations. Right. I think the agency may be wrong on that, but I think it overstates things to suggest the agency ignored the evidence. Well, they gave no weight at all to it. I mean, it was there. They did comment on it. They said they're rejecting it. So we submit, you know, they're not really engaging. Those declarations say that these types of activities, after reviewing, and they did review the declaration of Mr. Park, they state explicitly that that's part of the evidence they're considering. They have reviewed that and said, yes, what Mr. Park is doing, that's typical of what an executive does. I know I have like 50 seconds left. I would like to reserve at least a little bit of time for rebuttal. All right. Thank you, counsel. Thank you. We'll hear from the government. Good afternoon and may it please the court. My name is Victor Mercado and I am the attorney for for the United States. Here appellants, the court should deny appellants appeal because they kind of showed that USCIS abused its discretion in denying GBI's petition for a visa on behalf of Mr. Park. It is GBI's burden to show that for three years prior to his arrival to the United States, Mr. Park was employed in an executive capacity and Mr. Powell noted the relevant period at issue here. But the agency, but as the court correctly found, the record does not compel the contrary conclusion that... Counsel, let's go right to Mr. Powell's contentions. First of all, it does seem to be a pretty good omission on the part of the agency, which has written a very long opinion, to not have mentioned or not to have mentioned Mr. Park's declaration, not to have referred to Mr. Park any place. It does refer to Ms. Kim, but it doesn't refer to the Pack declaration, which seemed to be a major part of Mr. Park's evidence. So I'd like to address that. And then the second thing I'd like to address is the question on the expert witnesses. The agency does address the expert witnesses, but it dismisses them and says, well, they're not qualified. And that does not support it by substantial evidence because both of the witnesses have testified that they have participated in a number of these kinds of proceedings before and that their declarations have always been accepted by the agency. So if you'll address those two things, please. Okay. Sure. With regards to Mr. Park's declaration, it is correct that the statement itself was not directly cited by USCIS in their very extensive letter. However, the info from the letter and the arguments from the letter were indeed considered by USCIS. USCIS points that they summarize the evidence on the record, including the charts and other information that is drawn from Mr. Park's letter, as well as from other sources in the record. And the agency on page 26 of the ER, they refer to the motion to reopen and the request for evidence response as a source for plaintiff's allegation that one of the allegations that support. When one looks at the arguments referred to by CIS in the appellant's motion statement before the court, they do refer to Mr. Park's declaration. So it is reasonable to infer that the agency did consider the evidence of the record, specifically Mr. Park's statement, even though they didn't specifically mention it. If plaintiff appellant's argument is akin to saying just because they did not use the magic words of we're citing to Mr. Park's statements that by itself means that the agency did not consider the evidence, but the agency did consider the evidence. And as the agency stated, there were issues with the allegation that Mrs. Kim was providing administrative support in large part because the allegation that Mrs. Kim was providing administrative support as stated by Mr. Park was inconsistent with other record evidence like the organizational charts and other documents that refer to Mrs. Kim as a purchasing agent, not as a person that engages in providing administrative or secretarial tasks for Mr. Park, which is something that the agency did state on the record. So in that aspect, we submit that the agency did consider Mr. Park's statement, although not explicitly as we'll have to concede by the language of the letter. With regards to the issue of the experts, the agency did consider the expert declarations. It is reasonable for the agency to have concluded, to have provided lesser evidentiary weight to those letters, given that the letters rely on the OOH handbook, not on the standards of the immigration code. But also the letter did not discuss the periods that were being analyzed as part of their analysis, which is another basis why the agency did reject those allegations. What about the agency's claim that the experts weren't qualified? That seems overblown, isn't it? That the experts were not qualified as experts? Well, their finding was that they were not experts in the immigration code, on their immigration law. They weren't purporting to be experts on the immigration code. They were simply trying to apply the thing as anybody would. I don't know what an expert would do. You're not going to bring lawyers in here and testify as experts. Understood. But the issue here is not whether a plaintiff meets the, whether appellants meet the OOH standards, is whether he meets the immigration code standard, which is a different question. How different is the OOH handbook from the CFR? Well, the, I'm sorry, you mean those, the, I mean, under the immigration code, there are, the question is whether the, whether the, whether the plaintiff is engaging primarily in a, in an executive capacity during the year before, during the year prior to their arrival in the United States. Yeah. So what, so what, what definition should they have used? They should have relied on the, it will have, they should have relied on the, on the definitions in the, on the statute, on the regulation, on the 8 U.S.C. 1153, as well as the implementing regulations. However, Is that 8 CFR 204.5? That is correct. Okay. How, how, how is, how is the handbook different from these definitions? I'm sorry, your honor, I'm trying to look at my, on my notes. It is a little slow on my end. I mean, it seems to me that the, the handbook that they looked at, it looks like it's far more detailed than the, than 204.5. If anything, I would, I would expect that, that, that, that what they described in the occupation outlook handbook is far more detailed and far more restrictive than if they had simply gone to 8 CFR 204.5, whatever it is, J, I think. Yeah. No, no, I would, I would, okay. I would, I would consider that point. However, then, then what, then what's the error? Then what's the error on the part of the experts? If they have relied on a definition that is far more detailed and far more restrictive than the regulations. It's, it's ultimately a balancing of the, it's ultimately a conclusion of the agency to provide lesser weight, given that the agency has a more, more concern on the definition of the is more, the agency has a more, go ahead. Yes. What's the source of the OOH? What's the source of that? The, the OOH is a publication from the department of labor that details different qualifications, different definitions for different positions. It is not part of the INA. But ultimately, even if, even if the, even if the definition from the experts were to be considered, ultimately, if they, the plaintiff cannot even kind of establish during the, during the relevant period that they received assistance from Ms. Kim or other people that relieved the plaintiff of their administrative work. And for that reason, we asked the court to rule, to dismiss the appeal. Thank you. All right. Are there any other questions, Judge Barbee? No, thank you. All right. Rebuttal. Yes. Thank you, Your Honor. Just a quick point. I think the, the reason why the agency discounted or, or gave no weight to the expert witnesses. And also I think the declaration of Mr. Pack is because they had an incorrect view of what the statute requires on, in their decision, the exit of record page 28. They, they're looking for, they say that the INA focuses on a complex organizational hierarchy. The expert witnesses did not talk about that. The agency says inherent to the definition, the organization must have a subordinate level of managerial employees. We submit that's an incorrect understanding. Those are, that's not part of the INA definition. And we think that explains why the agency, you know, did, felt it didn't have to engage with this very significant evidence, Mr. Pack's declaration and the expert witness declarations. All right. Thank you. Thank you to both counsel. The case just argued is submitted for a decision by the court. We will be in recess for 20 minutes. We will return at 2 10. Thank you.
judges: Rawlinson, Bybee, Moskowitz